1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 PATRICIA SANDOVAL, et al.,                    )        Case No. CV 12-5517 FMO (SHx)
                                                )
12                        Plaintiffs,            )
                                                )
13              v.                              )        **ORDER Re:  DEFENDANT'S MOTION TO**
                                                )        **DISMISS**
14 CARNIVAL CORPORATION, et al.,                )
                                                )
15                        Defendants.            )
                                                )
16 _____             )

17

18         The court has reviewed and considered all the briefing filed with respect to Defendant

19 Carnival Corporation's Motion to Dismiss Based on <u>Forum Non Conveniens</u> and, Alternatively,

20 for Transfer Pursuant to 28 U.S.C. § 1404(a) or to Dismiss for Failure to State a Claim Pursuant

21 to Fed. R. Civ. P. 12(b)(6) ("Motion"), and concludes that oral argument is not necessary to

22 resolve the Motion.  <u>See</u> Fed. R. Civ. P. 78; Local Rule 7-15; <u>Willis v. Pac. Mar. Ass'n</u>, 244 F.3d

23 675, 684 n. 2 (9th Cir. 2001).

24                                        **BACKGROUND**

25         On June 25, 2012, plaintiffs Patricia Sandoval and Nicholas Taliaferro ("plaintiffs") filed this

26 admiralty action, which arose from the shipwreck of the MS <u>Costa Concordia</u> ("vessel" or

27 "<u>Concordia</u>") off the coast of Italy.  (<u>See</u> Complaint at ¶¶ 2.1 & 4.2-4.4).  Costa Crociere S.p.A.

28 ("Costa Crociere"), an Italian corporation, owned and operated the vessel.  (<u>See</u> <u>id.</u> at ¶ 1.3;

Declaration of [Costa Crociere General Counsel] Alessandro Carella Filed in Support of Defendant Carnival Corporation's Motion to Dismiss ("Carella Decl.") at ¶¶ 3, 10 & 20). The Concordia was an Italian-flagged vessel that primarily called on ports in the Mediterranean Sea. (See id. at 20). The Concordia did not enter United States territorial waters. (See id. at ¶ 7). Ficantieri – Cantieri Navali Italiani S.p.A. ("Ficantieri"), an Italian company, designed and built the Concordia. (See id. ¶¶ 20-21). The Italian government and RINA, S.p.A. ("RINA"), an Italian company that conducts inspections on behalf of the Italian Ministry of Transport and Infrastructure, reviewed and approved the design of the Concordia. (See id. at ¶¶ 13, 21 & 25). Likewise, the Italian Coast Guard, RINA, and Italian port authorities performed audits and inspections after the Concordia entered service. (See id. at ¶ 26). As required by Italian and international law, Costa Crociere maintains its own Safety Management System ("SMS"), a set of formal procedures covering a range of shipboard operations, including the safety of personnel, the testing of lifesaving equipment, and training procedures for ship safety. (See id. at ¶ 12). RINA reviewed Costa Crociere's SMS, and the Italian Ministry of Transport and Infrastructure approved Costa Crociere's SMS before it became operative. (See id. at ¶ 13).

Plaintiffs, who were passengers onboard the Concordia, assert that on January 13, 2012, the captain, Francesco Schettino, took the vessel "off its intended course to pass closely by the Isola del Giglio as a 'salute' to its inhabitants," and the vessel struck a rock and capsized. (Third Amended Complaint ("TAC") at ¶¶ 4.2 & 4.3; Carella Decl. at ¶¶ 29-30). Costa Crociere established the itinerary for the Concordia, and Captain Schettino set the route. (See Carella Decl. at ¶ 29). Plaintiffs allege that the shipwreck resulted from "human error," which "occurred on the bridge of the Vessel as part of her navigation[.]" (TAC at ¶ 4.12).

With the assistance of Italian authorities, including the Italian Navy, Coast Guard, and Civil Protection Agency, the Concordia passengers and crew were evacuated to Giglio Island. (Carella Decl. at ¶ 32). Plaintiffs allege that in the course of the shipwreck and evacuation, they "suffered physical and emotional injuries." (TAC at ¶ 4.5). The Concordia remained immobile on a reef off of Giglio Island; salvage operations have been under way. (Carella Decl. at ¶ 33). Italian authorities have conducted multiple investigations of the Concordia shipwreck, including an inquiry

1   by the local harbor master of Livorno; an investigation by the IMO Marine Safety Investigation

2   body, which is part of the Italian Ministry of Transport and Infrastructure; and a criminal

3   investigation by the Public Prosecutor for Grosseto, which is the region of Tuscany where the

4   shipwreck occurred.  (Id. at ¶¶ 36-37 & Exh. 1).

5          In the original Complaint, plaintiffs asserted claims against Carnival Corporation

6   ("defendant" or "Carnival"); Costa Crociere, a subsidiary of non-party Carnival plc, and Doe

7   defendants.  (See Complaint at ¶¶ 1.2-1.5; Carella Decl. at ¶ 9).  Carnival is a Panamanian

8   corporation based in Miami, Florida.  (See Complaint at ¶ 1.2; Motion at 5; Corrected Reply in

9   Support of Defendant Carnival Corporation's Motion to Dismiss Based on Forum Non Conveniens

10  and, Alternatively, for Transfer Pursuant to 28 U.S.C. § 1404(a) or to Dismiss for Failure to State

11  a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Reply") at 18).  On October 19, 2012, plaintiffs filed

12  their First Amended Complaint ("FAC"), which named as defendants several individual Carnival

13  defendants and the vessel's purported architect.[1]  (See FAC at 1).  On December 5, 2012,

14  plaintiffs filed a notice of dismissal without prejudice as to Costa Crociere.  (See Plaintiffs' Notice

15  of Dismissal as to Defendant Costa Crociere, SpA Only at 1).

16         On December 21, 2012, plaintiffs filed a Second Amended Complaint ("SAC") against

17  Carnival and the same individual defendants.  (See SAC at ¶¶ 1.2-1.6 & 1.8).  On July 3, 2013,

18  the parties filed a stipulation to dismiss the individual defendants without prejudice.  (See

19  Stipulation to Dismiss Certain Claims at ¶ 1).

20         On January 10, 2014, plaintiffs filed the TAC – the operative complaint – asserting the

21  following  causes of action: (1) negligence; (2) gross negligence; and (3) res ipsa loquitur against

22  Carnival.  (See TAC at ¶¶ 5.1-7.2).  Plaintiffs allege that Carnival failed to impose "adequate

23

24  _____

25  [1] The First Amended Complaint included as defendants (1) Micky Arison, the Chairman of the
    Board and Chief Executive Officer of Carnival; (2) Howard S. Frank, the Vice Chairman of the

26  Board and Chief Operating Officer of Carnival; (3) Arnold W. Donald, the Chairperson of
    Carnival's Health, Environmental, Safety & Security Committee; (4) Joseph Farcus, an architect

27  who was allegedly involved in the design of the vessel; and (5) Joseph Farcus, Architect, P.A.,
    an entity that was allegedly involved in the design of the vessel (collectively, "individual

28  defendants").  (See FAC at ¶¶ 1.3-1.6 & 1.8).

1   safety policies and procedures," and alternatively, that "Carnival was negligent as operator of the

2   Vessel, which negligence caused the injury of Plaintiffs[.]"  (Id. at ¶¶ 5.4 & 5.9).

3       Meanwhile, in Italy, plaintiffs retained counsel, who sent correspondence to Costa Crociere,

4   stating their intention to assert claims in Italy.  (See Carella Decl. at ¶¶ 39-40 & Exhs. 3-6) (e.g.,

5   "We, hereby, reiterate the intention of our below mentioned clients to bring legal action against

6   Costa Crociere to seek indemnification for all the damages sustained and incurred subsequent

7   to the breakdown of the Costa Concordia vessel occurring on 01/13/2012.")

8                                   **LEGAL STANDARD**

9       "At bottom, the doctrine of forum non conveniens is nothing more or less than a

10  supervening venue provision, permitting displacement of the ordinary rules of venue when, in light

11  of certain conditions, the trial court thinks that jurisdiction ought to be declined."  American

12  Dredging Co. v. Miller, 510 U.S. 443, 453, 114 S.Ct. 981, 988 (1994).  "[T]he ultimate inquiry is

13  where trial will best serve the convenience of the parties and the ends of justice."  Koster v.

14  (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527, 67 S.Ct. 828, 833 (1947).

15      "To prevail on a motion to dismiss  based upon forum non conveniens, a defendant bears

16  the burden of demonstrating an adequate alternative forum, and that the balance of private and

17  public interest factors favors dismissal."  Carijano v. Occidental Petroleum Corp., 643 F.3d 1216,

18  1224 (9th Cir. 2011), cert denied, 133 S.Ct. (2013).  The defendant bears the "burden of making

19  a clear showing of facts which establish such oppression and vexation of a defendant as to be out

20  of proportion to plaintiff's convenience."  Id. at 1236.

21      The factors relating to the private interests of the litigants include: "(1) the residence of the

22  parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical

23  evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify;

24  (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other

25  practical problems that make trial of a case easy, expeditious and inexpensive."  Lueck v.

26  Sundstrand Corp., 236 F.3d 1137, 1145 (9th Cir. 2001) (internal citations omitted).  "The district

27  court should look to any or all of the above factors which are relevant to the case before it, giving

28

                                        4

1  appropriate weight to each." Id.  Accordingly, the court should "consider them together in arriving

2  at a balanced conclusion." Id. at 1145-46.

3       The public factors relating to the interests of the forums include: "(1) the local interest in

4  the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and

5  juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular

6  forum." Lueck, 236 F.3d at 1147 (internal citations omitted).

7       The "forum non conveniens determination is committed to the sound discretion of the

8  district court." Lueck, 236 F.3d at 1143 (9th Cir. 2001)  (internal citations omitted); see also Van

9  Cauwenberghe v. Biard, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953 (1988) ("the district court is

10 accorded substantial flexibility in evaluating a forum non conveniens motion").  "[W]here the court

11 has considered all relevant public and private interest factors, and where its balancing of these

12 factors is reasonable, its decision deserves substantial deference."  Lueck, 236 F.3d at 1143

13 (internal citations omitted).  With this framework in mind, the court turns to the specifics of

14 defendant's Motion.

15                                              **DISCUSSION**

16 I.      ADEQUACY OF ALTERNATIVE FORUM.

17      The court first considers whether "an adequate alternative forum is available to the plaintiff."

18 Lueck, 236 F.3d at 1143.  "The Supreme Court has held that an alternative forum ordinarily exists

19 when the defendant is amenable to service of process in the foreign forum." Id.  (citing Piper

20 Aircraft Co. v. Reyno, 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 435 (1981).  Carnival consents to

21 service of process in Italy.  (See Motion at 2 n. 2) ("Carnival will agree as a condition of dismissal

22 to the following stipulation for claims Plaintiffs re-file in Italy within 270 days of dismissal: (1) to

23 accept service of process and submit to jurisdiction of Italian civil courts[.]").  Accordingly,

24 defendant has met this threshold requirement. See Lueck, 236 F.3d at 1143 ("[t]his threshold test

25 is met here because Defendants have indicated that they are amenable to service of process in

26 [the alternate forum].").

27      Plaintiffs assert that this requirement is not met, because "Carnival entirely fails to show

28 that an Italian court would be likely to hear and decide these specific claims against a US-based

company." (Opposition to Defendant's Motion to Dismiss Based on <u>Forum Non Conveniens</u> and Alternatively, Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), or to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Opp.") at 6) (emphasis in original). Plaintiffs misconstrue the standard. "[A] foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." <u>Lueck</u>, 236 F.3d at 1144; <u>see also Piper Aircraft</u>, 454 U.S. at 247, 102 S.Ct. at 261 ("The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the <u>forum non conveniens</u> inquiry.").

To address Italian law issues, Carnival submits the Declaration of Bruno Cavallone, an Italian attorney and a professor of comparative civil procedure at the University of Milan. (<u>See</u> Declaration of Professor Bruno Cavallone ("Cavallone Decl.")[2] at ¶¶ 1-2). Professor Cavallone explains that an Italian court would exercise jurisdiction over plaintiffs' claims, and that a remedy is available under Italian law. (<u>See</u> Cavallone Decl. at ¶¶ 31, 36-38 & 40-43). Professor Cavallone states that "[b]ecause plaintiffs' injuries arise out of an accident that occurred in Italian territorial waters, the grounding of the <u>Costa Concordia</u>, an Italian civil court will have jurisdiction for plaintiffs' claims[.]" (<u>Id.</u> at ¶ 36). As for the available remedy, plaintiffs have multiple options under Italian law. For instance, Professor Cavallone explains that after an indictment issues in Italy, "injured parties" may assert claims in the criminal case, in order to seek compensation. (<u>See</u> <u>id.</u> at ¶ 31). The Public Prosecutor of Grossetto has designated the <u>Concordia</u> passengers and crew as "injured parties," so plaintiffs could seek damages in the criminal proceedings relating to the <u>Concordia</u> shipwreck. (<u>See</u> <u>id.</u> at ¶¶ 30 & 32). In the alternative, plaintiffs could file claims in Italian civil court. (<u>See</u> <u>id.</u> at ¶¶ 38-39). The Civil Code states that "[a]ny fraudulent, malicious, or negligent act that causes an unjustified injury to another obliges the person who has committed the act to pay damages." (<u>Id.</u> at ¶ 40) (quoting Civil Code art. 2043). Professor Cavallone states that "[t]he basic principle of damages under Italian law is that plaintiffs should be placed in the

_____

[2] The Cavallone Declaration was submitted as Exhibit 10 to the declaration of Thad T. Dameris, Carnival's counsel. (<u>See</u> Declaration of Thad T. Dameris in Support of Defendant Carnival Corporation's Motion to Dismiss Based on <u>Forum Non Conveniens</u> and, Alternatively, for Transfer Pursuant to 28 U.S.C. § 1404(a) or to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Dameris Decl.")).

1   same position they occupied before they were injured," and that both pecuniary and non-

2   pecuniary damages are available.  (See id. at ¶ 42) (citing Civil Code art. 1223-1226 & 2056-

3   2059).  According to Professor Cavallone, "if plaintiffs were to prove defendants were negligent,

4   then these provisions would entitle plaintiffs who prove losses from the Accident to recover for

5   those losses regardless of whether their origin is in contract or tort."  (Id. at ¶ 40).  As for the

6   specific claims, Professor Cavallone states that "plaintiffs do not need to plead a specific theory

7   of liability or label their claims: any 'right' or 'legitimate interest' acknowledged expressly or

8   implicitly by rule or principle of law will be protected by the courts."  (Id. at ¶ 41) (citing Italian

9   Constitution art. 24).  Last, the statute of limitations for tort claims is five years.  (Id. at ¶ 43) (citing

10  Civil Code art. 2946).  The Concordia shipwreck took place in January 2012, so plaintiffs' claims

11  would not be time-barred.  (See id.; TAC at ¶ 4.2).

12         The court is not persuaded by plaintiffs' contention, (see Opp. at 6), that the alternate forum

13  needs to address identical claims.  Plaintiffs do not dispute that some remedy is available under

14  Italian law.  (See, generally, Opp. at 5-6).  Nor do they rebut Professor Cavallone's declaration

15  with their own analysis of Italian law.  (See, generally, id.).  The court finds that Italy would provide

16  plaintiffs with "some remedy" and is an adequate alternative forum in this case.  See Lueck, 236

17  F.3d at 1143 ("The foreign forum must provide the plaintiff with some remedy for his wrong in

18  order for the alternative forum to be adequate."); see also Tuazon v. R.J. Reynolds Tobacco Co.,

19  433 F.3d 1163, 1178-80 (9th Cir.), cert denied, 549 U.S. 1076, 127 S.Ct. 723 (2006) (finding that

20  defendant established the adequacy of the Philippines as an alternative forum where defendant

21  "consent[ed] to service of process in the Philippines" and "offered an extensive affidavit by a

22  former Justice of the Philippine Court of Appeals, detailing background about the Philippines and

23  its court system, the availability of contract and tort relief, the discovery process, and procedural

24  formalities").

25  II.     BALANCE OF PUBLIC AND PRIVATE FACTORS.

26         The court first discusses the significance of plaintiffs' choice of forum, and then weighs the

27  competing private and public interest factors.

28

7

A.    Plaintiffs' Chosen Forum.

Where the plaintiff is a United States citizen or resident, the plaintiff's choice of his home forum should be afforded deference.  See Piper Aircraft, 454 U.S. at 255, 102 S.Ct. at 266. "When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." Carijano, 643 F.3d at 1227.  "The presence of American plaintiffs, however, is not in and of itself sufficient to bar a district court from dismissing a case on the ground of forum non conveniens." Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir.), cert denied, 464 U.S. 1017, 104 S.Ct. 549 (1983); see also Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 665 (9th Cir. 2009), cert denied, 131 S.Ct. 645 (2010) ("We afford greater deference to a plaintiff's choice of home forum because it is reasonable and convenient.  However, the deference due is far from absolute. . . .  A district court has discretion to decide that a foreign forum is more convenient.") (internal quotation marks and citations omitted).   The Ninth Circuit has upheld forum non conveniens dismissals of claims brought by U.S. citizens for injuries sustained abroad.  See, e.g., Loya, 583 F.3d at 665-66; Cheng, 708 F.2d at 1407 & 1410.  In addition, multiple courts have dismissed claims by U.S. citizens arising from the Concordia shipwreck.  See, e.g., Warrick v. Carnival Corp., 2013 WL 3333358, *7 & *11 (S.D. Fla. 2013) ("The strong presumption in favor of Plaintiff's choice of forum does not compensate for the cost, expense, and difficulty of obtaining evidence from Italian sources in this case."); Perez v. Carnival, Civil Case No. CV 12-23194, order dated Feb. 21, 2013, at 16 ("Perez") (S.D. Fla.) (submitted as Dameris Decl., Exh. 1).  Here, the court affords appropriate deference to plaintiffs' choice of home forum, but acknowledges that it has the discretion to determine whether Italy is a more convenient forum.

B.    Private Interest Factors.

1.    **Residence of the Parties.**

Plaintiffs reside in San Diego, California (see Motion at 9; Opp. at 9 n. 7).  Carnival is a Panamanian Corporation that resides in Miami, Florida.  (See Motion at 5; Opp. at 10; Reply at 18).  The residence of the parties factor weighs in favor of plaintiffs.

2.    **Factors Relating to Witnesses.**

8

1       The court consolidates its discussion of the private interest factors relating to witnesses,

2    i.e., the first, fourth and fifth factors outlined in Lueck.  The court "evaluate[s] the materiality and

3    importance of the anticipated [evidence and] witnesses' testimony and then determine[s] their

4    accessibility and convenience to the forum."  Lueck, 236 F.3d at 1146 (internal citations omitted);

5    cf. Carijano, 643 F.3d at 1230 (considering "the true nature of Plaintiffs' claims").

6       In the TAC, plaintiffs assert causes of action for negligence, gross negligence, and res ipsa

7    loquitur.[3]  (See TAC at ¶¶ 5.1-7.2).  Plaintiffs allege that the "Vessel's captain took [the Concordia]

8    off its intended course," which led to the shipwreck.  (Id. at ¶ 4.2).  According to plaintiffs, the

9    "tragic [collision] . . . was the result of human error, which error resulted from the failure of Carnival

10   to have a proper bridge management policy and manual, and to implement proper safety

11   management systems and protocols[.]"  (Id. at ¶ 4.6).

12       Carnival asserts that the witnesses in Italy are "key," and that "there are dozens of

13   witnesses in Italy from Costa and third parties involved in operational, safety, and training

14   standards."  (Motion at 9).  Carnival includes the following categories of non-party witnesses:

15            (1) personnel from the Italian Administration and RINA who reviewed and

16            approved Costa's [Safety Management System] SMS, including its [Bridge

17            Resource Management] BRM policy, and who certified Concordia and her

18            crew as meeting all requirements under Italian and international law; (2)

19            Concordia's crew's Italian and European instructors on BRM, navigation, and

20            safety policies; (3) Italian armed forces personnel and local officials involved

21            in rescue operations; (4) Italian Administration personnel who communicated

22            with [Captain] Schettino and Costa after the Accident; (5) eyewitnesses to

23            the Accident; and (6) Plaintiffs' Italian physicians.

24   (Motion at 12).  Such witnesses may offer testimony relating to the negligence claims, such as

25   "what policies Costa had in place[,]" "the training of Concordia's crew," the "policies [that] had

26

27   _____

28       [3] Defendant moved to dismiss the res ipsa loquitur claim, on the ground that it is not a claim
     for substantive relief. (See Motion at 24).  It is unnecessary to address this issue.

1   been reviewed and approved by the Italian Administration and RINA," and the safety certifications

2   by the Italian Administration and RINA.[4]  (Id. at 9).

3         In response, plaintiffs argue that focus of their case is on Carnival's domestic activities –

4   how the accident "could and should have been prevented by actions here, in the US." (Opp. at

5   1).  Plaintiffs further argue that Italian witnesses are unnecessary, because defendant has not

6   sought foreign discovery in the litigation.  (See id. at 13-14).  Plaintiffs also contend that due to

7   technical advances, "the cost of obtaining evidence and testimony from Italy is negligible[.]" (Id.

8   at 14).  Finally, plaintiffs assert that it would be burdensome for them and their "California

9   physicians and health-care providers" to testify in Italy.  (Id. at 15-16).

10        Under the circumstances, the court is persuaded that the Italian witnesses are material and

11  important to the litigation, and that it would be highly burdensome to secure their testimony in the

12  United States.  See Lueck, 236 F.3d at 1146; Perez at 6 (for negligence theory, "[b]reach,

13  causation, and damages . . . are tied with evidence located abroad).  The Italian witnesses'

14  testimony relating to the Concordia shipwreck is highly relevant to plaintiffs' negligence claim.

15  Costa Crociere implemented the safety policies in place at the time of the accident.  See Warrick,

16  2013 WL 3333358, at *10 ("Carnival Corporation set company-wide policies, but Costa

17  implemented them").  The crew of the Concordia could testify regarding their compliance with

18  safety protocols.  Likewise, the crew could testify regarding the navigation of the ship, which

19  relates to causation, see id. at *8, and Italian regulators could testify regarding the standard of

20  care and safety of the ship.  See id.  As for damages, plaintiffs' doctors in Italy could testify as to

21  their injuries after the shipwreck.  Thus, "the vast majority of evidence relevant to negligence is

22  in Italy."  Perez at 8.

23        Even if plaintiffs sought to limit their affirmative case to Carnival's U.S. activities, (see Opp.

24  at 2), defendant's affirmative defenses are relevant to the inquiry.  See Biard, 486 U.S. at 528,

25  108 S.Ct. at 1953 ("the district court must scrutinize the substance of the dispute between the

26  _____

27    [4] Defendant is not required to identify witnesses in exact detail for the purposes of this inquiry.

28  See Carijano, 643 F.3d at 1231 ("The proponent of a forum non conveniens dismissal is not
    required to identify potentially unavailable witnesses in exact detail.").

parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action."). Moreover, plaintiffs practically concede that the shipwreck in Italy is relevant. (See, e.g., TAC at ¶ 4.5) ("[d]uring the [collision], and during and after the evacuation, Plaintiffs clearly in the zone of danger, suffered physical and emotional injuries[.]"). In addition, the court is not persuaded by plaintiffs' argument that Italian witnesses should be disregarded, because Carnival did not serve foreign discovery. (See Opp. at 13-14). The analysis is not limited to the subject of United States discovery. Cf. Lueck, 236 F.3d at 1147 ("It is clear that evidence important to this dispute exists in both the United States and New Zealand. . . . [T]he district court cannot compel production of much of the New Zealand evidence"). As for plaintiffs' argument that Italian witnesses can testify through electronic means, defendant has the right to seek live witness testimony. Cf. Perez at 8 ("Because Plaintiffs cannot dictate Defendants' trial strategy and method of proof, the Court finds that the above-mentioned evidence is relevant to the case[.]"). Thus, the testimony of Italian witnesses is relevant and important to the litigation.

In addition, the inability to compel live testimony from Italian non-parties strongly favors dismissal. See Warrick, 2013 WL 3333358, at *7; Perez at 9-10. In order to obtain testimony from the Italian witnesses, defendant would need to comply with the Hague Convention to gather the evidence, a process that can be "unduly time consuming and expensive." Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct., 482 U.S. 522, 542, 107 S.Ct. 2542, 2555 (1987). While Italy ratified the Hague Convention, it did not agree to execute letters rogatory for pretrial discovery. (See Cavallone Decl. at ¶ 34). Plaintiffs do not dispute that Carnival would need to rely on the Hague Convention in the United States, in order to seek testimony from Italian witnesses. (See, generally, Opp. at 14-17). By contrast, an Italian court can compel testimony from Italian entities, such as the Italian Ministry for Infrastructure and Transport, the Italian Coast Guard, and RINA. (See Cavallone Decl. at ¶¶ 15, 17 & 19-21). In addition, Carnival has stipulated to making witnesses available upon request in Italy. (See Motion at 2 n. 2).

The cost of compelling attendance of foreign witnesses in California also weighs in favor of an Italian forum. See Warrick, 2013 WL 3333358, at *7 ("It will be much less expensive for the

11

five Plaintiffs to travel to Italy than for the entire cadre of relevant Italian and European witnesses to travel to the United States.").  While plaintiffs contend that it would be costly for the "California-based fact witnesses – Plaintiffs and their medical providers" to travel to Italy, (Opp. at 15), the cost would be substantially lower than the expense for an "entire cadre" of European witnesses. As for defense witnesses, Carnival has agreed to make its witnesses available in Italy.  (See Motion at 2 n. 2).  In short, the factors relating to witnesses weigh heavily in favor of dismissal on forum non conveniens grounds.

### 3.    Access to Evidence and Sources of Proof.

The court next considers the third private interest factor, access to physical evidence and other sources of proof.  The court considers the "materiality and importance" of the evidence, and considers its accessibility and convenience.  See Lueck, 236 F.3d at 1146.  Carnival has identified a substantial amount of evidence in Italy that is purportedly relevant.  Specifically, Carnival has identified the following:

> (1) Concordia's VDR [voyage data recorder], bridge voice recorder, live web cameras, and other data devices; (2) Costa documents pertaining to BRM policy, compliance with the ISM Code and Italian laws, navigation and safety policies, crew training standards, mustering, and the drafting, implementation, and certification of Costa's SMS; (3) training and employment records for Schettino and the crew; (4) documents from the training centers in Italy and Europe that provided BRM instruction to Schettino and the crew; (5) documents from the Italian Administration and RINA reflecting approvals of Costa's SMS, including BRM; (6) documents from the Italian Administration and RINA reflecting issuance of certifications for Schettino and the crew; (7) documents from the Italian Administration and RINA regarding inspections, audits, and certification of Concordia and its implementation of muster policies; and (8) documents and witness statements collected during Italian investigations.

1    (Motion at 11; Carella Decl. at ¶ 42).  Plaintiffs respond that "[t]here is no evidence to be sought

2    in Italy that is pertinent to this inquiry," because plaintiffs' claims are directed to Carnival's U.S.

3    activities and policy.  (See Opp. at 11-12).

4            However, it appears that the significant majority of relevant evidence is in Italy.  See Perez

5    at 8 ("the vast majority of evidence relevant to negligence is in Italy."); Giglio Sub s.n.c. v. Carnival

6    Corp., 2012 WL 4477504, *15 (S.D. Fla. 2012), aff'd, 523 F.App'x 651 (11th Cir. 2013)

7    ("implementation and monitoring evidence is likely available almost exclusively in Europe, as it

8    requires proof of how Defendants did or did not put into place and keep track of compliance with

9    policies aboard the Costa Concordia"); see also Piper Aircraft, 454 U.S. at 257-58, 102 S.Ct at

10   267 ("the District Court did not act unreasonably in concluding that fewer evidentiary problems

11   would be posed if the trial were held in Scotland.  A large proportion of the relevant evidence is

12   located in Great Britain.").  For example, the Concordia's data storage devices, such as the

13   voyage data recorder or bridge voice recorder, may substantiate the parties' allegations regarding

14   the navigation of the ship, compliance with safety procedures, and the cause of the shipwreck.

15   (See Carella Decl. at ¶ 42).  In addition, the documentary evidence, such as safety certifications

16   and RINA materials relating the Concordia's compliance with Italian and international law, relates

17   to the negligence claim.  (See id. at ¶¶ 25, 27 & 42).  Moreover, the Italian authorities have taken

18   witness statements, which may corroborate the parties' accounts of the Concordia's shipwreck

19   and evacuation.  (See id. at ¶¶ 36 & 42).  Thus, a substantial volume of relevant evidence is

20   located in Italy.

21           Further, just as the court cannot compel the testimony of witnesses located in Italy, the

22   court cannot compel the production of physical evidence located in Italy.  See Lueck, 236 F.3d

23   at 1147 ("because the district court cannot compel production of much of the New Zealand

24   evidence, whereas the parties control, and therefore can bring, all the United States evidence to

25   New Zealand, the private interest factors weigh in favor of dismissal.").  Here, Carnival has

26   stipulated to make available the evidence in an Italian court.  (See Motion at 2 n. 2).  By contrast,

27   compliance with the Hague Convention and Italian law would render written discovery highly

28   burdensome.  (See Cavallone Decl. at ¶¶ 20 & 35) (discussing requirement for in camera review

by the Court of Appeals, under Article 69 of law 218/1995). In short, it would be substantially less burdensome for the parties to obtain access to the evidence while litigating in Italy. (See, e.g., id. at ¶ 30) (after the criminal indictment, "all of the evidence collected during the preliminary investigation is presented to the court and is available to the defendant and injured parties") (citing Code of Criminal Procedure art. 405). Accordingly, the court finds that access to evidence and sources of proof heavily favors dismissal.

### 4. Enforceability of Judgment.

Carnival has stipulated that any judgment rendered in Italy would be enforceable in the United States. (See Motion at 2 n. 2). Accordingly, this factor is neutral.

### 5. Convenience to Litigants.

Plaintiffs reside in Southern California, so litigating in this forum is more convenient than Italy. Carnival is based in Florida. The convenience to the litigants of proceeding in California weighs in favor of plaintiffs.

### 6. Other Practical Problems Impacting Trial.

Finally, the court considers other practical problems impacting trial. The avoidance of "duplicative proceedings is precisely the sort of 'practical problem' in the adjudication of a case that the doctrine of forum non conveniens is designed to avoid." American Home Assurance Co. v. TGL Container Lines, Ltd., 347 F.Supp.2d 749, 767 (N.D. Cal. 2004); Lueck, 236 F.3d at 1147 (related proceedings weigh in favor of dismissal). Plaintiffs have informed Costa Crociere that they intend to pursue legal action in Italy. (See Carella Decl. at ¶¶ 39-40 & Exhs. 3-6). Nevertheless, plaintiffs contend that it would be efficient and inexpensive to try this case in California, and that it is irrelevant that they are preserving their rights in Italy. (See Opp. at 17-18).

Under the circumstances, the court is persuaded that this factor weighs in favor of dismissal. Plaintiffs' planned litigation against Costa Crociere in Italy would duplicate a substantial amount of effort, and it would create the risk of inconsistent results.

### 7. Summary of Private Interest Factors.

The private interest factors relating to the residence of and convenience to the litigants favor plaintiffs. The factors relating to witnesses, access to physical evidence, and other practical

1    problems for trial strongly weigh in favor of dismissal.  The circumstances surrounding the

2    <u>Concordia</u> shipwreck, including the navigation of the vessel, the cause of the accident, Costa

3    Crociere's implementation of safety protocols in Italy, and plaintiffs' injuries in the course of the

4    accident are highly relevant to the claims and potential defenses.  Moreover, the vast majority of

5    the relevant evidence and witnesses remain in Italy, beyond the court's power to compel.  The

6    enforceability of judgment factor is neutral.  After giving the factors the appropriate weight, the

7    court finds that the private interest factors tilt decidedly in favor of dismissal.  <u>See</u> <u>Lueck</u>, 236 F.3d

8    at 1145-46.

9        C.    <u>Public Interest Factors</u>.

10             **1.    Local interest**.

11       The court considers whether Italy has a stronger local interest in the lawsuit than California.

12   In mass tort litigation, courts have found that the site of the accident has a strong local interest.

13   <u>See</u>, <u>e.g.</u>, <u>Piper Aircraft Co.</u>, 454 U.S. at 260, 102 S.Ct. at 268 ("Scotland has a very strong

14   interest in this litigation.  The accident occurred in its airspace.  All of the decedents were Scottish.

15   Apart from Piper and Hartzell, all potential plaintiffs and defendants are either Scottish or

16   English."); <u>Lueck</u>, 236 F.3d at 1147 ("the interest in New Zealand regarding this suit is extremely

17   high.  The crash involved a New Zealand airline carrying New Zealand passengers.") (internal

18   citation omitted).  Here, the <u>Concordia</u> shipwreck took place in Italy, the <u>Concordia</u> had not been

19   in U.S. waters, and she carried a relatively small number of U.S. passengers.  (<u>See</u> Carella Decl.

20   at ¶¶ 28, 30 & 34) (approximately 100 U.S. citizens/residents out of 3,206 total passengers; while

21   approximately one-third of the 3,206 passengers were Italian, and another third were German or

22   French).  In addition, the <u>Concordia</u> is an Italian-flagged vessel, and Italian authorities have

23   investigated the shipwreck.  (<u>See</u> <u>id.</u> at ¶¶ 20 & 36).  Thus, Italy has a very strong local interest

24   in this case.

25

26

27

28

1    By contrast, California has a slight connection to the claims in this case.[5]  See Cheng, 708

2    F.2d at 1411 ("courts may validly protect their dockets from cases which arise within their

3    jurisdiction, but which lack significant connection to it").  There is no allegation that Carnival

4    engaged in tortious activities in California.  (See Motion at 16; see, generally, TAC).  Plaintiffs

5    contend that the United States has a strong local interest, because Carnival is based in Florida

6    and the Senate performed a related inquiry.  (See Opp. at 19).  However, plaintiffs have failed to

7    demonstrate that California has a significant interest in this litigation.  Thus, the local interest

8    factor tips heavily in favor of Italy.

9              **2.    Court's familiarity with governing law**.

10    The court also considers the familiarity with governing law.[6]  See Lueck, 236 F.3d at 1148

11    n. 6 ("because New Zealand law is likely to apply in this suit, the choice of law determination

12    weighs in favor of dismissal."); In re Air Crash at Madrid, Spain, on August 20, 2008, 893

13    F.Supp.2d 1020, 1040 (C.D. Cal. 2011) ("The mere likelihood or possibility that foreign law would

14    apply weighs in favor of dismissal."); Warrick, 2013 WL 3333358, at *10 ("Italy has a substantial

15    interest in the accident as shown by its administrative and criminal investigations into it.  Italian

16    law will likely apply in this case.  An Italian court would be more at home with the law that will likely

17    govern this action.") (footnote omitted).

18    Defendant contends that the claims require application of Italian law.  (See Motion at 16-

19    17).  Plaintiffs concede that Italian law applies.  (See TAC at ¶ 2.1) ("This is an admiralty and

20

21    _____

        [5] The court notes that there is a split of authority whether to consider the state's local interest
22    or the forum's interest.  See Carijano, 643 F.3d at 1233 n. 3 ("There appears to be a difference
        of opinion about whether it is appropriate to compare the state interests, or whether this factor is
23    solely concerned with the forum where the lawsuit was filed.").  The court concludes that Italy's
        local interest is greater under either approach.
24

25        [6] Under most circumstances, it is unnecessary to perform a complete choice of law analysis.
        See Lueck, 236 F.3d at 1148 ("the choice of law analysis is only determinative when the case
26    involves a United States statute requiring venue in the United States, such as the Jones Act or
        the Federal Employers' Liability Act"); Carijano, 643 F.3d at 1234 ("resolving the conflict of law
27    issue would involve a full blown analysis of the state interests and relative impairment.  As the
        district court noted, forum non conveniens is designed so that courts can avoid such inquiries at
28    this early stage.").

1  maritime claim within this Court's original jurisdiction pursuant to 28 U.S.C. sections 1331 and

2  1333, and brought pursuant to the General Maritime Law of the United States, as supplemented

3  by Italian law."). In addition, the need to translate Italian evidence weighs in favor of dismissal.

4  See Leetsch v. Freedman, 260 F.3d 1100, 1105 (9th Cir. 2001) ("Not only is the district court

5  unfamiliar with German law, were it to hear the case it would be required to translate a great deal

6  of that law from the German language, with all the inaccuracy and delay that such a project would

7  necessarily entail."). Accordingly, this factor favors dismissal.

8          **3.**    **Burden on Local Courts and Juries, Congestion, and Costs of**

9          **Resolving a Dispute Unrelated to a Particular Forum**.

10        The remaining public interest factors "all relate to the effects of hearing the case on the

11  respective judicial systems." Carijano, 643 F.3d at 1232. Defendant contends that these factors

12  favor dismissal, as "Plaintiffs' claims have no connection whatsoever to the CDCA – Plaintiffs

13  reside in San Diego." (Motion at 17; see Opp. at 9 n. 7). Plaintiffs respond that California has a

14  local interest in the case, for instance, because Carnival ships sail from the Port of Los Angeles.

15  (Opp. at 21). Plaintiffs also contend that court congestion is not an issue in this district. (See id.).

16  Also, plaintiffs argue that the case will not impose unfair costs on this district, because Carnival

17  is a leading cruise line and is based in the U.S., and because "dozens of American passengers"

18  were onboard during the shipwreck. (Id. at 22).

19        The court is persuaded that the remaining public interest factors weigh in favor of dismissal.

20  The court considers the local interest in the context of its connection to the dispute. See Loya,

21  583 F.3d at 665 ("no cause to burden Washington jurors with this litigation given that most of the

22  allegedly wrongful conduct took place in Mexico and among non-Washington defendants.");

23  Lueck, 236 F.3d at 1147 ("[b]ecause the local interest in this lawsuit is comparatively low, the

24  citizens of Arizona should not be forced to bear the burden of this dispute"). As previously

25  discussed, the Concordia is an Italian-flagged vessel that capsized in Italian waters. (See Carella

26  Decl. at ¶¶ 20 & 30). Moreover, approximately one-third of the 3,206 passengers were Italian,

27  while only about 100 passengers were U.S. citizens. (See id. at 34). Moreover, Carnival is not

28  accused of wrongful conduct in the Central District of California. (See, generally, TAC). The

1  Central District of California has significantly less interest in this dispute than Italian courts, so the

2  burden should not be imposed on California courts or jurors.

3       As for court congestion, the Ninth Circuit has recognized the "crowded dockets" in the

4  Central District of California.  See Carijano, 643 F.3d at 1233.  By contrast, plaintiffs have not

5  offered support for its position that "the congestion of Italian courts would present a larger

6  problem." (Opp. at 21).

7       Finally, the costs of resolving this dispute in the Central District of California are high, given

8  the lack of connection between the litigation and the forum.  As previously discussed, plaintiffs do

9  not allege that Carnival engaged in tortious activity in California.  (See, generally, TAC).  Also,

10  while plaintiffs are based in California, they reside in San Diego, which is in the Southern District

11  of California.  (See Motion at 5; Opp. at 9 n. 7).  In short, the court concludes that the weight of

12  the public interest factors support dismissal.

13  III.    DISMISSAL SUBJECT TO CONDITIONS.

14       When considered together, the court finds that the balance of private and public factors

15  weigh in favor of dismissal and outweigh the deference owed to plaintiffs' chosen forum.  Italy is

16  not just an adequate forum, but a more appropriate and convenient one, given the particular facts

17  and circumstances of this case, and the private and public interest factors strongly favor litigating

18  this case there.  While the court is sympathetic to plaintiffs' contention that litigating in Italy would

19  be burdensome, plaintiffs have also indicated that they intend to pursue their rights in Italy.  Thus,

20  the court concludes, in its discretion, that this is a proper case for the careful application of the

21  doctrine of forum non conveniens.

22       The dismissal will be subject to the conditions (set forth below) agreed to by Carnival in its

23  papers.  Moreover, although there is no evidence that defendant has acted to the contrary, the

24  court directs defendant to cooperate in good faith in all pretrial and trial aspects of any Italian

25  litigation.  See Carijano, 643 F.3d at 1234.

26  **CONCLUSION**

27      **This Order is not intended for publication.  Nor is it intended to be included in or**

28  **submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.     Defendant's Motion to Dismiss Based on <u>Forum</u> <u>Non</u> <u>Conveniens</u> **(Document No. 145)** is **granted**.   The case is dismissed without prejudice based on <u>forum</u> <u>non</u> <u>conveniens</u> grounds.

2.     Provided plaintiffs file the claims (or the comparable claims under Italian law) asserted in this action in Italy within 270 days of dismissal, the dismissal is subject to Carnival: (1) accepting service of process and submitting to jurisdiction of the Italian courts; (2) making relevant witnesses and documents in their possession, custody, or control available upon request of Italian courts; (3) tolling the applicable statute of limitations as if the proceeding were originally filed in Italy; and (4) respecting any post-appeal final judgment entered by the Italian courts.

Dated this 15th day of September, 2014.

/s/
Fernando M. Olguin
United States District Judge